Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC
P.O. Box 7051
Missoula, MT 59807
406-721-1435
tim@bechtoldlaw.net

Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

| | |
|---|---|
| MARIA DEL MAR COLL, individually, and as Personal Representative of the Estate of Roger Holt,<br><br>    Plaintiff,<br>vs.<br><br>UNITED STATES OF AMERICA, and DOES 1-10,<br><br>    Defendants. | **CV 21-113-GF-BMM**<br><br>**PLAINTIFF'S STATEMENT OF DISPUTED FACTS** |

1. Roger Holt and his wife, Maria Del Mar Coll, gathered with one of Holt's children for Labor Day in early September 2020. Maria Del Mar Coll Deposition, Exhibit A, pp. 26–27.

    **Undisputed**.

2. Following this gathering, Holt tested positive for COVID-19 on September 12, 2020. Lewis & Clark County COVID Records, Exhibit B, pp. USA_8334–36.

   **Undisputed.**

3. On September 24, 2020, Holt was taken by ambulance to the Fort Harrison VA after he began experiencing shortness of breath. Fort Harrison Medical Records, Exhibit C, p. USA_04386.

   **Undisputed.**

4. He was admitted to the intensive care unit at the Fort Harrison VA and stayed there from September 24 through 27, 2020. Ex. C, pp. USA_04317, 4320.

   **Undisputed.**

5. On the morning of September 27, Holt was intubated and put on a ventilator. Ex. C, USA_04317–18.

   **Undisputed.**

6. That evening, he was transferred to the Denver VA ICU. Ex. C, p. USA_ 04317.

   **Undisputed.**

7. On September 30, Holt was taken off sedatives, but he remained unresponsive to verbal and tactile stimulus. Denver VA Medical Records, Exhibit D, pp. USA_07616, 7602.

**Undisputed.**

8. Imaging performed on October 1 showed evidence of strokes, which the radiologist read as "chronic," but the neurologists interpreted as "age-indeterminate." Ex. D, pp. USA_07575–76.

**Undisputed.**

9. Holt received care at the Denver VA until his death on October 21, 2020. Ex. D., pp. USA_6672–73, 6678.

**Undisputed**

10. The causes of death, as indicated on Mr. Holt's death certificate, were multiple bilateral ischemic strokes, COVID-19 pneumonia, COVID-19 infection, and acute respiratory distress syndrome. Death Certificate, Exhibit E.

**Undisputed.**

11. Plaintiff's allegations of negligence relate only to the care provided at Fort Harrison. First Amended Complaint, Dkt. 7, ¶¶ 31–34.

**Undisputed.**

12. More specifically, Plaintiff alleges that the providers at Fort Harrison should have conducted a CT angiogram of Holt's chest, put Holt on full-dose anticoagulants, ordered a head CT, and requested a neurology consult. Report of Dr. Scott Stuart, Exhibit F.

**Undisputed.**

13. Dr. Stuart summarized his opinions during his deposition:

> At Fort Harrison they should have investigated with an ultrasound and a chest CT, with the angiographic help, looked for pulmonary emboli and deep venous thrombi in the legs, and I think they would have found them and they should have started full-dose anticoagulation for that. And I think the practitioners at Fort Harrison should have done more to investigate the confusion and figure out if there was something else going on. And I think all of that care would have really helped the Denver critical care folks, because they kind of received Mr. Holt and they were a little behind the eight ball with all the stuff going on with him.

Dr. Scott Stuart Deposition, Exhibit G, pp. 66:12–67:1

**Undisputed.**

14. Dr. Stuart opined that if these things had been done, Holt would have had reduce side effects from the stroke. Ex. G, p. 67:12–16.

**Undisputed that Dr. Stuart testified, "I think the morbidity from his stroke -- and I comment in the last part of paragraph 2 -- that he would have had reduced morbidity from his stroke had the blood clots been diagnosed and had the TIA and stroke been investigated adequately." Disputed that "reduced morbidity" is a "side effect."**

15. In relation to Dr. Stuart's summary of what he thinks the providers at Fort Harrison should have done, he was asked, "Are you offering an opinion about whether if those things had been done, whether he would have to a

reasonable degree of medical certainty been more likely to live?" Ex. G, p. 67:1–5. Dr. Stuart responded, "I am not."

**Undisputed.**

16. The only statement in Dr. Stuart's disclosure related to causation is that a strokes should have been considered as potential "causes" of Holt's confusion. Ex. F.

**Disputed. Dr. Stuart's disclosure also states, "If a TIA or CVA had been confirmed, then it's likely that another anti-platelet medication, clopidogrel, would have been started for Mr. Holt that would have likely avoided some of the neurologic morbidity that subsequently complicated his hospitalization and contributed to his death. If the TIA or CVA would have been linked to his venous thromboembolic disease, the early use of full-dose anticoagulation would have likely had the same positive effect." Dkt#22-6. Dr. Stuart also testified that, had the proper CT scans and anticoagulants been administered, it would have improved Mr. Holt's condition in the long term with regard to his respiratory function, and he testified, "I think it would have increased his chances of overcoming his respiratory failure and subsequently ARDS [acute respiratory distress syndrome] more quickly." Stuart Deposition, 69:5-16.**

DATED this 10th day of February, 2023.

/s/Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC